# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR BLAJOS, | ) 1:08-cv-1176 GSA |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff, Hector Blajos ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 11, 2008, the action was reassigned to the Honorable Gary S. Austin for all purposes.

1

# **FACTS AND PRIOR PROCEEDINGS**[2]

On or about April 5, 2006, Plaintiff filed an application for supplemental security income alleging disability since January 11, 2006. AR 110;113. His application was denied initially and on reconsideration. AR 79-82; 84-87. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 88. ALJ Bret Hoffman held a hearing on March 25, 2008, and issued an order denying benefits on April 21, 2008. AR 5-65. On September 26, 2008, the Appeals Council denied review. A.R. 5-8.

<u>Hearing Testimony</u>

ALJ Hoffman held a hearing on March 25, 2008, in Fresno, California. Plaintiff appeared and was represented by Melissa Proudian. AR 18.

Plaintiff is forty four year old, single, male. AR 19. He does not have any children. AR 20. He completed the ninth grade and has not received any vocational training. AR 22. At the time of the hearing, Plaintiff was living with his family, which included his mother, father, two sisters, and their five children. AR 23; 62. He has lived with them for the past three months. AR 23. His family was financially supporting him prior to that time. AR 23; 62. He also receives food stamps. AR 23. Plaintiff possesses a California driver's license and drives everyday to visit friends and family, as well as to go the grocery store. AR 20-22. His driving is limited, however, by his carpal tunnel syndrome and his back pain. AR 22.

Plaintiff last worked at Zacky farms where he has hanging turkeys on a shackle. AR 23. The turkeys weighed fifty to sixty pounds. AR 23-24. He stopped working there in 2005 because of his carpal tunnel syndrome and because he hurt his back. AR 24. Plaintiff filed a Worker's Compensation claim which resulted in a settlement, but he does not receive continuing medical benefits as part of that case. AR 24-25.

Prior to working at Zacky Farms, Plaintiff worked at La Tapatia, a tortilla factory, for approximately one month. AR 28. Plaintiff left that job because he moved out of town. AR 28. Before working at La Tapatia, Plaintiff was employed at Valley Lahvosh as a sanitation worker

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

where he lifted forty-five pound sacks. AR 29-30; 33.  Plaintiff had worked there for at least four years but was fired in 1999. AR 29-30.  He believed he was fired because he could not read or write. AR 30. When the ALJ noted that Plaintiff indicated he could read and write English on his application for benefits, Plaintiff indicated that his reading and writing abilities were very limited. AR 32; 121.  Plaintiff stopped working between 1999 and 2005 for "no reason" and lived off of his savings during that time. AR 29.  Prior to working at Valley Lahvosh, Plaintiff worked at Flowers Bakery for fifteen years in the sanitation department where he lifted forty to fifty pound sacks. AR 33.

Plaintiff is unable to perform his past work because of his carpal tunnel syndrome in his left hand.  AR 35.  He is also blind in his left eye and suffers from pain in his back, both of his legs, and his heels.  AR 35-36.

Plaintiff's difficulty with his carpal tunnel syndrome began while he was working at Zacky Farms in 2005. AR 36.  The injury occurred all at once when his arm just "started hurting." AR 37; 39.  He was put on light duty making boxes for one day. AR 37; 39.  The boxes weighed under ten pounds and he performed this job for six hours, but his left wrist started hurting him. AR 39-40.  Plaintiff returned to his regular job, however, he was unable to complete his normal job duties. AR 40.   Plaintiff did not go back to work and did not seek other employment after that time. AR 41.  He did not see his treating physician for his left arm after that point, however, he did get physical therapy. AR 41-42.  Plaintiff received physical therapy until September 2007, but stopped because Workers' Compensation would no longer pay for it. AR 41-42.

Plaintiff wears a brace on his left arm every day including when he sleeps to prevent his wrist from moving. AR 43-44.  When the ALJ noted that the brace looked like it had not been worn every day for months, Plaintiff indicated that he washes the brace every three days. AR 45.  Plaintiff indicated that he had a different Volar splint that he used for approximately one or two weeks but stopped using it because it did not help him. AR 45.  Plaintiff indicated that surgery was recommended but he elected not to have it. AR 47.  He may have surgery in the future if the pain was strong enough. AR 47.

As a result of his carpal tunnel syndrome, Plaintiff is unable to lift anything with his left hand except for a newspaper or a cup of soda. AR 48-49. He can also hold a coin between his left index finger and his thumb. AR 52. He is able to grasp objects with his left hand for approximately one hour but then his hand starts to hurt and swell. AR 49. He can also perform repetitive movements but is only able to do so for three to four minutes before needing to sit and rest for two or three hours. AR 50. He is able to reach overhead to get something out of the cupboard and he can reach out in front of his shoulder, however, it hurts him to do so. AR 51-52. He also experiences pain when he showers. AR 48. In the past, Plaintiff applied ice to alleviate pain but he no longer does so. AR 52. Plaintiff indicated that he is able to lift two or three pounds using both of his arms, and four to five pounds using just his right arm. AR 52.

In addition to the difficulties with his left arm, Plaintiff also experiences pain all over his lower back. AR 52-53. The back pain began when he was working at Zacky Farms. AR 55. He takes Ibuprofen three times a day which helps alleviate some of the pain but it makes him nauseous. AR 53-54. Plaintiff has not contacted his doctor to get a different medication. AR 55. Plaintiff went to physical therapy in the past for his back pain but it did not help. AR 55.

Plaintiff is able to sit and stand but he is in constant pain and suffers from stiffness and tightness. AR 56. Plaintiff lays down for three to four hours a day to rest his back which provides him relief but this does not alleviate all of his back pain. AR 57. Plaintiff is only able to stand for a minute and then he needs to get up, walk, and massage his back. AR 58. He is able to walk from his apartment to his mailbox. AR 58. Plaintiff does not cook but he could fix himself something to eat if "nobody was around." AR 59. He also grocery shops and lifts bags into the car but they only weigh about two pounds. AR 62-63.

Medical Record[3]

On December 19, 2005, Dr. Frank Cantrell, MD, a neurologist performed a left wrist nerve conduction study which was consistent with severe left carpal tunnel syndrome. AR 165-166. An EMG of the upper left extremity taken on the same day was normal. AR 166. Plaintiff

---

[3] The entire medical record was reviewed, however, the Court will only summarize the medical evidence related to Plaintiff's carpal tunnel syndrome as his arguments only relate to this medical condition.

was seen by Dr. Hangshik Han, MD, a hand surgeon in January 2006. AR 188. The doctor noted that Plaintiff had been experiencing left hand numbness and tingling for six weeks. Plaintiff denied night awakening or weakness, but complained that he was unable to perform his normal activities. AR 188. The examination revealed no gross deformities of Plaintiff's left hand. However, Plaintiff had positive Tinel's and Phalen signs over the carpal tunnel, but negative signs over the Guyon's canal and cubital tunnel. AR 188. There was also no evidence of thenar atrophy or wrist pain. AR 188. Dr. Han diagnosed Plaintiff with carpal tunnel syndrome and noted that he did not believe Plaintiff's symptoms were severe enough to warrant surgery because Plaintiff's pain was tolerable with a splint. Plaintiff was referred for physical therapy. AR 188.

Plaintiff received physical therapy from January 17, 2006 through February 13, 2006 at Lindsay Pimentel Hand to Shoulder Rehab. AR 168-174. It was noted that Plaintiff had made progress, however, his function and numbness issues were not completely resolved. AR 168.

When Plaintiff returned to Dr. Han on February 15, 2006, he stated that his symptoms had improved dramatically and that he was very happy with the function of his left hand. AR 187. However, on March 28, 2006, Plaintiff saw Dr. Han again and indicated his symptoms had worsened. AR 187. Specifically he was experiencing constant pain, numbness, and tingling in his left hand. AR 187. Dr. Han recommended surgery, however, Plaintiff was not interested. AR 187. On May 9, 2006, Plaintiff was still complaining of numbness and tingling, but was also waking up during the night despite wearing the protective splint. AR 186. Dr. Han noted that Plaintiff's symptoms were "somewhat under control" but that Plaintiff had an appointment to see another surgeon in Los Angeles. AR 186. Dr. Han recommended over the counter pain medications. AR 186.

On June 16, 2006, Dr. J.V. Glaser, MD, a state agency non-examining doctor, completed a Physical Functional Capacity Assessment. AR 175-182. Dr. Glaser opined Plaintiff could perform light work. AR 176. Specifically, Dr. Glaser found Plaintiff could occasionally lift, carry, push, and pull twenty pounds, and frequently lift, carry, push and pull ten pounds with his upper right extremity. AR 176. However, Plaintiff could not use his left upper extremity at all.

AR 176.  Dr. Glaser also noted Plaintiff had limited use of his upper left extremity in conjunction with limitations in balancing, crawling, and handling.  AR 177-178. Dr. Glaser's assessment noted that there was no examining source statement available at the time of the assessment. AR 181.

On June 20, 2006, Dr. Han indicated that Plaintiff's symptoms were worsening and that surgery was the only option.  AR 186.  Plaintiff indicated that he wanted to see the Workers' Compensation physicians before making up his mind. AR 186.  On July 6, 2006, Dr. Han completed a form for the Employment Development Department in which he stated that Plaintiff had carpal tunnel syndrome in both hands and needed surgery.  AR 194.  He also indicated that Plaintiff's primary treating physician determined that Plaintiff could do modified duty at the time. AR 194.

Plaintiff returned to Dr. Han on July 18, 2006, and reported that nerve conduction studies completed by doctors in Los Angeles indicated that Plaintiff did not have carpal tunnel syndrome but that he had tendinitis.  AR 186.  Dr. Han disagreed with this assessment but noted that as long as Plaintiff's symptoms were under control with the splint, Plaintiff did not need surgical intervention.  AR 186.  On August 29, 2006, Plaintiff told Dr. Han that he had spoken to his attorney and decided not to undergo the surgery.  AR 185.  Dr. Han noted that Dr. Mendel in Los Angeles informed Plaintiff that he did not have any carpal tunnel syndrome and did not need further treatment.  AR 185.  Dr. Han referred Plaintiff for additional hand therapy at Plaintiff's request.  AR 185.

On October 5, 2006, Dr. Han completed a "General Relief Form" in which he indicated that Plaintiff's carpal tunnel syndrome affects his ability to work with his hands but that Plaintiff could perform limited full-time work, and was able to perform light work only.  AR 192-193.  Dr. Han noted that Plaintiff did not want surgery but would pursue conservative therapy and wear a splint.  AR193.  Dr. Han noted that the onset of Plaintiff's condition began in December 2005 and the expected duration was only temporary. AR 193.  On October 10, 2006, Plaintiff saw Dr. Han and again reported symptoms of tingling and numbness in his left hand and that his arm felt heavy.  AR 185.  Dr. Han indicated he was reasonably certain of his left carpal tunnel syndrome

diagnosis. AR 185. However, since Plaintiff was not interested in surgery, there was nothing else the doctor could offer. AR 185. Dr. Han instructed Plaintiff to follow-up with Dr. Mendel who noted surgery was not necessary and that he would see Plaintiff as needed. AR 185.

On January 29, 2007, Dr. I. Ocrant, MD, a nonexamining state agency doctor, indicated that he reviewed the record and that he agreed with Dr. Glasser's June 16, 2006, assessment. AR 189-190. Specifically, Dr. Ocrant agreed with a light RFC-one arm impairment. AR 190.

### ALJ's Findings

The ALJ determined that Plaintiff suffers from severe impairments including left hand carpal tunnel sundrome and back pain. AR 10. Nonetheless, the ALJ determined these severe impairments did not meet or equal any listing impairments resulting in a disability finding. A.R. 10.

Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of light work. AR 10. Given this RFC, the ALJ found that Plaintiff could not return to his past work, however, the ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR 14. In doing so, the ALJ relied upon the medical-vocational guidelines ('the grids"). AR 14-15. He also found that Plaintiff was not credible. AR 12-13.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since March 31, 2006; (2) has a severe impairment based on the requirements in 20 CFR § 416.920(c); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) cannot perform any past relevant work; yet (5)  retained the RFC to perform jobs that exist in significant numbers in the national economy. A.R. 10-18.

Here, Plaintiff argues the ALJ committed reversible error at step five of the disability analysis by improperly rejecting the state agency doctors' medical opinions and by failing to obtain the testimony of a vocational expert.  Plaintiff contends this Court should reverse and

order the payment of benefits.  In the alternative, Plaintiff requests that the case be remanded for a new hearing.

## DISCUSSION

### A.    The ALJ's Treatment of the Physicians' Opinions

Plaintiff argues that the ALJ committed reversible error because he failed to explain why he did not accept the state agency physicians' opinions that Plaintiff suffered from a left upper extremity limitation.  As a result, the ALJ's RFC is inconsistent with the medical record. Moreover, Plaintiff argues that because he suffers from an significant non-exertional limitation, the ALJ was required to obtain the testimony from a vocational expert to ascertain whether Plaintiff could perform a significant number of jobs in the national economy.  Thus, the ALJ erroneously applied the grids.

In reply, Defendant argues that the ALJ's decision is supported the medical opinion of Dr. Han who is a hand specialist and Plaintiff's treating physician. Since the state agency doctors did not examine Plaintiff the ALJ properly gave Dr. Han's opinion more weight.[4]  Finally, Defendant contends both Dr. Glaser and Dr. Han found Plaintiff was capable of performing the full exertional demands of light work, so the assessments are not inconsistent.  Since the ALJ properly relied upon Plaintiff's treating physician's opinion that he could perform a full range of light work, the ALJ did not err in relying on the grids to determine Plaintiff was not disabled.

In determining Plaintiff's RFC, the ALJ noted the following :

> In October 2006, Dr. Han completed a form for the claimant's continued receipt of General Relief.  He indicated the claimant had carpal tunnel syndrome that affected his ability to work with his hands.  The doctor stated the claimant was able to perform limited full-time work, and was able to perform light work only. Dr. Han noted the onset date was December 2005 and that the duration was temporary.  I give substantial weight to this opinion because it is consistent with the medical evidence and the opinion of the State agency medical consultants who reviewed the record.  I give weight to the State agency's opinion as well. (Citations omitted). AR 11.

While all of the doctors indicate that Plaintiff should be limited to light work, Dr. Glaser, the non examining state agency physician, specifically found Plaintiff could not use his left upper

---

[4] Defendant argues that both of the state agency doctors are pediatricians based on their code, however, the record does not establish this fact and the Court will not adopt this position.

1  extremity at all. AR 176. Dr. Glaser also imposed additional limitations in conjunction with
2  balancing, crawling, and handling. AR 177. This opinion was affirmed by Dr. Ocrant, another
3  state agency doctor. AR 189-190. This is a limitation that was not addressed by the ALJ in any
4  way. Although, the ALJ accorded the state agency doctors' opinions weight, he never addresses
5  the discrepancy between Dr. Han's report and the state agency doctors' assessments with regard
6  to the left arm restrictions.

7  As noted by Defendants, the Court recognizes that the opinions of treating doctors should
8  be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v.*
9  *Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).
10 Moreover, the opinion of a nonexamining physician cannot, by itself, constitute substantial
11 evidence that justifies the rejection of the opinion of either an examining physician or a treating
12 physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d
13 1450, 1456 (9th Cir.1984). However, here, because the ALJ never addressed the discrepancy, it
14 is not clear that he even realized that the state agency doctors imposed a left arm limitation and
15 how that may have affected the RFC.

16 Social Security Ruling 96-6p requires the ALJ to consider and weigh the opinions of state
17 agency physicians and to explain the weight given to the opinions. In this case, the ALJ offers no
18 explanation why he rejects the additional limitation imposed by the agency physicians.
19 Therefore, the ALJ failed to articulate his reasoning and his evidentiary support for his
20 interpretation of the medical record. *Lester v. Chater*, 81 F. 3d at 830.

21 The Court rejects Defendant's argument that this error is harmless because all of the
22 doctors found that Plaintiff could perform the full exertional demands of light work and the ALJ
23 gave proper weight to Plaintiff's treating physician's opinion. The ALJ's failure to address this
24 limitation in the decision is not harmless because if the ALJ accepted the left arm extremity
25 limitation, it may have precluded the application of the grids. The grids may be used only where
26 they "completely and accurately represent a claimant's limitations." *Bruton v. Massanari*, 268 F.
27 3d 824, 827-828 (9th Cir. 2001); *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999); *see Jones*
28 *v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). "In other words, a claimant must be able to

1 perform the full range of jobs in a given category, i.e. sedentary work, light work, or medium
2 work." *Tackett v. Apfel*, 180 F. 3d at 1094.  Because the ALJ did not specifically address the
3 state agency physicians' opinions,  it is unclear whether he considered the extent of the
4 limitation, and whether he would have classified the limitation as exertional or non-exertional.  If
5 a claimant suffers from non-exertional limitations, the ALJ may not apply the grids because the
6 grids are based on strength factors only.  *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(b);
7 *See also* 20 C.F.R. §§ 404.1569a; 416.969a (defining non-exertional limitations as limitations
8 that do not directly affect a claimant's [muscular] strength); *Desrosiers v. Secretary of Health &*
9 *Human Servs*., 846 F.2d 573, 576-77 (9th Cir. 1988) (noting that a sufficiently severe,
10 non-exertional impairment may limit a claimant's functional capacity in ways not contemplated
11 by the guidelines, rendering the guidelines inapplicable and noting that pain, postural limitations,
12 or environmental limitations are examples of non-exertional limitations).  Here, the state agency
13 doctors indicated Plaintiff was capable of performing light work but imposed a one arm
14 limitation.  AR 176-177;189-190.  They also imposed restrictions related to Plaintiff's ability to
15 use his upper left extremity in conjunction with balancing, crawling, and handling which are
16 arguably non-exertional limitations.  *See*, 20 CFR § 404.159a(c)(noting that non-exertional
17 limitations include difficulty performing the manipulative or postural functions of some work
18 such as reaching, handling, stooping, climbing, crawling, or crouching).

19 Moreover, the Court rejects Defendant's argument that Dr. Glasser's opinion which was
20 formulated four months prior to Dr. Han's assessment was ambiguous and inconsistent with
21 Plaintiff's testimony.  As a preliminary matter, this reasoning was not articulated by the ALJ. A
22 reviewing court cannot affirm an ALJ's decision denying benefits on a ground not invoked by the
23 Commissioner.  *Stout v. Comm'r*, 454 F.3d 1050, 1054 (*citing* Pinto v. Massanari, 249 F.3d 840,
24 847 (9th Cir. 2001)).  Additionally, this reasoning is inaccurate because although Dr. Glasser's
25 assessment was completed prior to Dr. Han's report, Dr. Ocrant's report was completed *after* Dr.
26 Han's report. Dr. Ocrant clearly  "agree[d] to affirm [the] prior decision of a Light RFC-one arm
27 impairment." AR 190; 192-193.  In doing so Dr. Ocrant indicates that all evidence in the record
28

was reviewed and the assessment of June 16, 2006, was affirmed as written. Therefore, Dr. Ocrant imposed the limitation even after reviewing Dr. Han's report.

Based on the above, the Court will remand the case so that the ALJ can adequately address all of the doctors' opinions as outlined above. After doing so, the ALJ shall make a determination whether the grids are still applicable.

**B.    *The ALJ's RFC Assessment***

Plaintiff also argues that the ALJ's functional residual capacity assessment is inconsistent with his findings that Plaintiff suffers from a severe impairment because under the regulations, an individual cannot suffer from an impairment without causing a limitation. Plaintiff contends because the ALJ's RFC did not impose a limitation addressing his severe left hand carpal tunnel syndrome, the ALJ's finding is contradictory to the regulations and should be reversed. Given the Court's ruling above his issue appears to be moot. Nonetheless, the Court is not persuaded by this argument since the ALJ limited Plaintiff to light work which is, in and of itself, a limitation.

## REMAND

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that remand for further proceedings is proper to allow the ALJ to review all of the physician's reports as outlined above.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ to conduct further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Hector Blajos and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:  March 2, 2010**           /s/ **Gary S. Austin**
                              UNITED STATES MAGISTRATE JUDGE